# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAHEEM HANSBERRY,<br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br>    Respondent. | No. 3:16-cv-00965 (SRU) |

## RULING ON PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Raheem Hansberry, a prisoner currently incarcerated at the Federal Correctional Institution Berlin, has moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Hansberry argues that, at sentencing, I erroneously classified him as a career offender under U.S.S.G. § 4B1.1, and that his prior convictions for violation of New York Penal Law ("NYPL") § 220.31 do not count as prerequisites for the career-offender guideline. Hansberry asserts that his counsel was constitutionally ineffective by failing to prevent his misclassification as a career offender. The government makes several arguments in response, among them that any error was harmless because I expressly declined to rely upon the career offender enhancement when sentencing Hansberry. I agree that I imposed Hansberry's sentence without regard to his status as a career offender. Therefore, any error in classifying him as a career offender was harmless, and I deny Hansberry's habeas petition.

## I.     Standard of Review

Section 2255 provides a prisoner in federal custody an opportunity to challenge the legality of his or her sentence. To obtain relief under section 2255, the petitioner must show that his or her prior sentence was invalid because the sentence: (1) was "imposed in violation of the Constitution or laws of the United States"; (2) was imposed "without jurisdiction" by the

sentencing court; (3) was "in excess of the maximum authorized by law"; or (4) is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The standard is a high one; even constitutional errors will not be redressed through a section 2255 petition unless they have had a "substantial and injurious effect" that results in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal citations omitted); *Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht*'s harmless error standard to section 2255 petition).

A section 2255 petition "may not be employed to relitigate questions which were raised and considered on direct appeal." *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992); *see also Reese v. United States*, 329 F. App'x 324, 326 (2d Cir. 2009) (quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)). That limitation prohibits relitigation of issues that were expressly or impliedly decided on direct appeal. *United States v. Ben Zvi,* 242 F.3d 89, 95 (2d Cir. 2001). A court may only reconsider an earlier decision if it is "confronted with 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

Furthermore, a section 2255 petition is "not a substitute for direct appeal." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Zhang v. United States,* 506 F.3d 162, 166 (2d Cir. 2007)). A court will not review claims that the petitioner failed to properly raise on direct review "unless the petitioner shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence . . . ." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). In the context of a habeas petition, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

The petitioner bears the burden of proving, by a preponderance of the evidence, that he is entitled to relief. *See Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995). A district court is not required to accept the petitioner's factual assertions as credible "where the assertions are contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2009). Section 2255 also requires that the district court hold a hearing on the petitioner's motion unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001). But "although a hearing may be warranted, that conclusion does not imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim." *Id.* (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). "If it plainly appears from the [petition], any attached exhibits, and the record of prior proceedings that the [petitioner] is not entitled to relief, the judge must dismiss the [petition]." *Puglisi*, 586 F.3d at 213.

## II. Background

### A. Conviction and sentencing

On January 25, 2011, Raheem Hansberry was indicted for possession with intent to distribute ten grams or more of phencyclidine ("PCP"), in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(iv) (Count One); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) & 924(c)(2) (Count Two); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2) (Count Three). Indictment, Doc. No. 1, at 1–2, *United States v. Hansberry*, No. 3:11-cr-00017 (SRU) (D.

Conn.).[1] On October 3, 2011, Hansberry pleaded guilty to Counts One and Three of the indictment pursuant to a written plea agreement.[2] Cr. Doc. No. 26; *see* Cr. Doc. No. 55. He appeared before me for sentencing on July 3, 2012.

The chief issue at sentencing was whether Hansberry ought to be classified as a career offender under U.S.S.G. § 4B1.1(b) based on his prior convictions. Treatment as a career offender sharply increased Hansberry's Guidelines range. With the career offender enhancement, after a two-level reduction for acceptance of responsibility, Hansberry was subject to an offense level of 32, a criminal history of six, and a Guidelines range of 210 to 262 months of imprisonment. Without the enhancement, after a two-level increase for the presence of a firearm and a two-level reduction for acceptance of responsibility, Hansberry would have been subject to an offense level of 26, a criminal history of six, and a Guidelines range of 120 to 150 months of imprisonment. Thus, the enhancement dramatically affected Hansberry's advisory range under the Sentencing Guidelines.

The Presentence Report indicated—in agreement with the government—that Hansberry was properly classified as a career offender because he had at least two previous convictions for a violent felony or serious drug offense, including convictions for assault in the second degree and criminal sale of a controlled substance. *See* Cr. Doc. 31, at 6–7. Hansberry argued that he should not be considered a career offender. Although he conceded that his 2005 conviction for criminal sale of a controlled substance (in violation of NYPL § 220.31) counted toward career offender status, he contested the applicability of two other convictions on which the government

---

[1] I refer to documents in Hansberry's criminal case, *United States v. Hansberry*, No. 3:11-cr-00017 (SRU), with the shorthand "Cr. Doc."
[2] Hansberry subsequently changed counsel and moved to withdraw his plea of guilty, Cr. Doc. No. 33, before withdrawing that motion. Cr. Doc. 47.

4

relied: a 1999 conviction for attempted criminal sale of a controlled substance (in violation of NYPL § 220.31) and a 2005 conviction for attempted assault in the second degree (in violation of NYPL § 120.05). *See* Cr. Doc. 51, at 3. Because the 1999 section 220.31 conviction had not required the state to show that the substance was covered by the Controlled Substances Act, and the 2005 section 120.05 conviction was not listed in the plea agreement as a possible predicate offense, Hansberry argued that neither should count toward career offender status. *See id.* Accordingly, Hansberry asserted, he only had one predicate conviction and did not qualify as a career offender. *See id.* at 10.

After considering the parties' submissions and hearing argument, I concluded that Hansberry ought to be classified as a career offender under the Guidelines. As the parties agreed, Hansberry's 2005 conviction for criminal sale of a controlled substance counted toward career offender status. *See* Sentencing Hr'g Tr., Doc. No. 19-1, at 9–10. In addition to that conviction, I held that Hansberry's 2005 conviction for attempted assault in the second degree also counted toward classification as a career offender. Even though the latter conviction was not listed in the plea agreement, I reasoned that the omission "d[id]n't matter . . . because that's between the parties," and I was obligated to "look at all the convictions, whether they [were] listed in the plea agreement or not." *Id.* at 10. The 2005 conviction for attempted assault in the second degree was listed in the Presentence Report, and the parties had an opportunity to brief and argue whether that conviction's omission from the plea agreement meant that counting it toward career offender status would violate due process. Hence, I held that there was no due process violation and that the career offender enhancement applied.

Nevertheless, I chose not to rely on Hansberry's enhanced Guidelines range. As I stated in the judgment, "Hansberry's criminal history [was] long, but not deep; it consist[ed] of a

5

number of minor offenses . . . for which Hansberry generally received light sentences." Judgment, Doc. No. 19-2, at 1. The longest sentence imposed on Hansberry up to that point had been two-and-a-half to five years of imprisonment. Relative to Hansberry's earlier terms of incarceration, "the punishment called for by the career offender guidelines"—around 20 years— was "a dramatic increase over anything [he had] ever served before." Sentencing Hr'g Tr., Doc. No. 19-1, at 22. Moreover, "treatment as a career offender significantly overstate[d] the seriousness of both [Hansberry's] criminal history and his conduct in th[e] case." Judgment, Doc. No. 19-2, at 1. Because I sensed that "the sentence called for by the career guidelines [was] just too high in light of the prior sentences [he had] served," I elected to "tak[e] a bit of a risk" on Hansberry. Sentencing Hr'g Tr., Doc. No. 19-1, at 22. Thus, I relied on *United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir. 2001), and *United States v. Rivers*, 50 F.3d 1126, 1131 (2d Cir. 1995), to depart downward from Hansberry's Guidelines range.

Instead of sentencing Hansberry based on his career offender status, I considered what Hansberry's Guidelines range "would [have] be[en] but for the career offender provisions." Sentencing Hr'g Tr., Doc. No. 19-1, at 19. Absent the career offender enhancement, I concluded, Hansberry would have been subject to a Guidelines range of 120 to 150 months of imprisonment. *See id.* I sentenced him to the bottom of that range, 120 months, *id.* at 23, more than seven years below the bottom of his enhanced Guidelines range. In order to "balance[] the downward departure on the term of imprisonment," however—and to "allow[] the court to monitor [Hansberry's] conduct"—I also imposed a "longer period of supervised release," seven years. Judgment, Doc. No. 19-2, at 1. The latter represented an upward departure from Hansberry's Guidelines range for supervised release.

Judgment entered on July 9, 2012. Cr. Doc. No. 59. Hansberry appealed, and after his counsel filed an *Anders* brief, the Second Circuit summarily affirmed. *See* Cr. Doc. No. 64.

B. Section 2255 petition

On June 20, 2016, Hansberry filed two *pro se* motions to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. *See* Doc. No. 1; *see also* Doc. No. 1, *Hansberry v. United States*, No. 3:16-cv-00978 (SRU). In the first motion, Hansberry argued that he should not have been subject to the career offender enhancement because his prior convictions for violation of NYPL § 220.31 should not have been treated as predicate convictions under the Supreme Court's so-called "categorical approach," and that his counsel was constitutionally ineffective in failing to prevent his misclassification as a career offender. In the second motion—filed by the Federal Defender's Office in accordance with the Standing Order re Petitions Under 28 U.S.C. §§ 2255 or 2241 in Light of *Johnson v. United States*, http://ctd.uscourts.gov/sites/default/files/ Standing%20Order%20Johnson%206-14-16.pdf—Hansberry argued that the career offender enhancement was unconstitutionally vague. I ordered the two cases consolidated after counsel was appointed for Hansberry under the Criminal Justice Act. *See* Doc. No. 4.

Following the Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886 (2017), which held that the Guidelines were not susceptible to a vagueness challenge, I ordered Hansberry to show cause why his petition should not be dismissed. Hansberry filed a response effectively conceding that his claim for relief under *Johnson* could not be sustained in light of *Beckles*, but asserting that his argument regarding NYPL § 220.31 was unaffected. Doc. No. 12.

In light of Hansberry's response, on May 15, 2017, I ordered the government to show cause why the relief requested by Hansberry should not be granted. Doc. No. 14. The government responded to the order to show cause on August 24, 2017, Doc. No. 19, and

7

Hansberry filed a reply on October 20, 2017, Doc. No. 24. Because Hansberry's petition raises a pure issue of law, I exercised my discretion to decide the motion without an evidentiary hearing. *See Morales v. United States*, 635 F.3d 39, 45 (2d Cir. 2011).

## III.  Discussion

The government makes two responses to Hansberry's habeas petition. First, it raises a variety of procedural obstacles, asserting (1) that Hansberry's motion is untimely under 28 U.S.C. § 2255(f)(1); (2) that it is barred by Hansberry's waiver in his plea agreement of any right to collaterally attack his conviction; and (3) that it was procedurally defaulted because Hansberry failed to raise his claim on direct appeal. Second, the government contends that Hansberry's petition fails on the merits. According to the government, not only were Hansberry's drug convictions properly treated as predicate offenses for application of the career offender guideline, but also any error was harmless because Hansberry was not sentenced under the career offender guideline and received a concurrent sentence on his firearm conviction.

I agree with the government that Hansberry's motion must be denied, for a very simple reason: I did not rely on the career offender guideline when sentencing Hansberry. Thus, any error in classifying him as a career offender was harmless and cannot support a claim for ineffective assistance of counsel. Because Hansberry's petition "fail[s] on the merits," I need not "conclusively decide . . . [the government's] procedural challenges." *Harrington v. United States*, 689 F.3d 124, 127 (2d Cir. 2012); *accord Cardenas v. Stephens*, 820 F.3d 197, 201 (5th Cir. 2016) ("Because Cardenas's claim easily fails on the merits, we need not address the procedural-default ruling."); *Miller v. Mullin*, 354 F.3d 1288, 1297 (10th Cir. 2004) ("In the interest of judicial economy, we need not and do not address these [procedural] issues . . . because the case may be more easily and succinctly affirmed on the merits.") (internal quotation

marks and brackets omitted); *Ladson v. Nash*, 53 F. App'x 574, 575 (2d Cir. 2002) (summary order) ("We need not resolve this procedural question . . . because petitioner's . . . claim fails on the merits."). Instead, I proceed directly to the merits.

The Sixth Amendment to the United States Constitution guarantees criminal defendants "the right . . . to have the Assistance of Counsel for [their] defence." U.S. Const. amend. VI. The Supreme Court has construed the right to assistance of counsel to mean the right of "reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show that a conviction was unconstitutionally obtained due to ineffective assistance of counsel, a petitioner under section 2255 "must establish two elements." *Weingarten v. United States*, 865 F.3d 48, 52 (2d Cir. 2017). First, "the petitioner must show that counsel's performance was deficient by demonstrating that the representation 'fell below an objective standard of reasonableness.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). Second, "the petitioner must show that counsel's deficient representation was prejudicial to the defense by establishing 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

In the present case, Hansberry argues that "counsel's performance was deficient" because his trial attorney failed to challenge counting Hansberry's controlled substance convictions toward the career offender enhancement under the Supreme Court's so-called "categorical approach." I think it far from clear that Hansberry's counsel was constitutionally ineffective,[3] but

---

[3] Hansberry's argument that NYPL § 220.31 cannot be counted toward the career offender enhancement under the categorical approach has recently been lent support by *Harbin v. Sessions*, 860 F.3d 58 (2d Cir. 2017), and *United States v. Barrow*, 230 F. Supp. 3d 116 (E.D.N.Y. 2017). But Hansberry was sentenced years before those decisions were issued, and "[c]ounsel is not required to forecast changes in the governing law." *Weingarten v. United States*, 865 F.3d 48, 53 (2d Cir. 2017). Notwithstanding the recent authorities that support

even assuming, *arguendo*, that his representation was deficient, Hansberry cannot satisfy *Strickland*'s prejudice requirement. Simply put, I did not rely on Hansberry's purportedly erroneous classification as a career offender when he was sentenced. Thus, even if Hansberry's counsel had been ineffective, there is not a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Weingarten*, 865 F.3d at 52 (quoting *Strickland*, 466 U.S. at 694).

As an initial matter, I was not required to sentence Hansberry as a career offender because the Sentencing Guidelines—although "initially binding on district courts," *Beckles*, 137 S. Ct. at 894—were "rendered . . . 'effectively advisory'" by *United States v. Booker*, 543 U.S. 220 (2005). *See Beckles*, 137 S. Ct. at 894 (quoting *Booker*, 543 U.S. at 245). Hence, "a sentencing court may no longer rely exclusively on the Guidelines range; rather, the court 'must make an individualized assessment based on the facts presented' and the other statutory factors." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The sentencing court may "impose a non-Guidelines sentence based on a disagreement with the Commission's views." *Pepper v. United States*, 562 U.S. 476, 501 (2011). Furthermore, the court also may depart from the advisory range where (as here) the Guidelines "significantly over-represent[] the seriousness of [the] defendant's criminal history." *Mishoe*, 241 F.3d at 219 (quoting U.S.S.G. § 4A1.3).

To be sure, the Guidelines remain "the sentencing court's 'starting point and . . . initial benchmark,'" which means that "an error related to the Guidelines can be particularly serious." *Molina-Martinez v. United States*, __ U.S. __, 136 S. Ct. 1338, 1345 (2016) (quoting *Gall*, 552 U.S. at 49). Ordinarily, "a defendant who has shown that the district court mistakenly deemed

---

Henderson's position, his argument does not appear to me to have been "so obvious that it was unreasonable for [his] counsel to forgo it." *See id.*

applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome." *Id.* at 1346. But the Supreme Court has noted that "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist." *Id.* For example, if the record clearly shows that "the district court thought the sentence it chose was appropriate irrespective of the Guidelines range," or that "the judge based the sentence he or she selected on factors independent of the Guidelines," then that suffices "to counter any ostensible showing of prejudice the defendant may make." *Id.* at 1346–47 (quoting *United States v. Vonn*, 535 U.S. 55, 68 (2002)). That is precisely what happened here.

At Hansberry's sentencing hearing, I expressly disregarded the career offender enhancement, "t[ook] a risk" on Hansberry, and "downwardly depart[ed] from the career offender guidelines . . . [to] impose a shorter sentence." Sentencing Hr'g Tr., Doc. No. 19-1, at 22. The sentence I imposed was at the bottom of what Hansberry's guideline range would have been without the career offender enhancement,[4] and nearly eight years below the bottom of his guideline range with the enhancement. *See id.* at 19. As Hansberry's counsel candidly acknowledges, "it is difficult to point to prejudice in a case in which the defendant was sentenced to a 120-month sentence when the Sentencing Guidelines, with a career-offender enhancement, recommended a sentence with a 210 to 262 month range." Reply Mem. Supp. Mot. Vacate, Doc.

---

[4] In his first motion to vacate, Hansberry stated that his guidelines range would have been 92 to 115 months, meaning that "the downward departure . . . still resulted in a sentence that was higher than the 115 month guideline maximum." Mot. Vacate, Doc. No. 1, at 16. With Hansberry's uncontested criminal history category of VI, a range of 92 to 115 months would be produced by an offense level of 23. Hansberry might have arrived at an offense level of 23 by subtracting a third level for acceptance of responsibility and declining to increase two levels for the presence of a firearm. But he did not challenge my reliance on an offense level of 26 at trial, on appeal, or in these habeas proceedings. Therefore, I adhere to my conclusion that Hansberry's guidelines range without the career offender enhancement would have been 26, and that his 120-month sentence was at the bottom of the resulting range of 120 to 150 months of imprisonment.

11

No. 24, at 14. Here, because I expressly "based [Hansberry's] sentence . . . on factors independent of the Guidelines," any error in the calculation of Hansberry's Guidelines did not produce "a reasonable probability of prejudice." *See Molina-Martinez*, 136 S. Ct. at 1346–47.

Hansberry speculates that he may have been prejudiced because "the record does not make clear that the court would not have sentenced petitioner to a lower term had he not been in such a high guideline range due to the career offender designation." Reply Mem. Supp. Mot. Vacate, Doc. No. 24, at 14. To the contrary, the record shows that I already fully considered that Hansberry's "recommended sentence [was] much higher than it would have been because of the career offender provisions." Sentencing Hr'g Tr., Doc. No. 19-1, at 19. During the sentencing hearing, I calculated what Hansberry's guidelines range "would [have] be[en] but for the career offender provisions," and determined that the higher range "called for by the career guidelines [was] just too high in light of the prior sentences [he had] served." *Id.* at 25. At the same time, I noted that Hansberry "ha[d] a lot of convictions" and that the charges against him stemmed from "a very serious combination of possession of a large quantity of drugs and a loaded weapon." *Id.* at 18. I concluded that his sentence also needed to account for his "serious crime, . . . deter [him] when [he] ha[dn't] been deterred in the past[,] . . . protect the public[,] . . . [and] rehabilitate [him]." *Id.* After considering those circumstances along with the other factors identified in section 3553(a), I sentenced Hansberry to a "long period" of 120 months of imprisonment. *See id.* at 19. Thus, the record plainly demonstrates that, disregarding the Guidelines' career offender enhancement, I sentenced Hansberry to the shortest period of incarceration I considered sufficient to serve the purposes of sentencing. Any error in classifying Hansberry as a career offender did not affect his sentence.

I previously addressed a similar situation in *Pak v. United States*, 278 F. Supp. 2d 263 (D. Conn. 2003). There, Pak argued that his trial counsel had been ineffective in failing to initiate plea negotiations earlier, which deprived him of an extra reduction in his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(b)(2). With the additional one-point reduction, Pak—who was ultimately sentenced to 48 months of imprisonment—would have been subject to a guideline range of 41–51 months, rather than 46–57 months. I held that any error by Pak's attorney was harmless, because my "determination of Pak's sentence was by no means mechanical" and "Pak's sentence was not tied to the low end of the applicable guideline range." *Id.* at 268–69. "Looking at the totality of the circumstances," I had "tailored Pak's sentence to fit his criminal history and the seriousness of the crime underlying his conviction." *Id.* at 269. Even if Pak had "been subject to the lower guideline range," I concluded, I "still would have imposed a sentence of 48 months' incarceration in order to reflect the seriousness of the crime and Pak's circumstances." *Id.* Therefore, because there was not a "reasonable probability that, but for counsel's error, the defendant would have received a different sentence," I denied Pak's motion to vacate his sentence on the basis of ineffective assistance of counsel. *Id.* (citing *Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002)).

Similarly, in *Harris v. United States*, 2013 WL 3874474 (D. Conn. July 25, 2013), my colleague U.S. District Judge Robert N. Chatigny denied a section 2255 motion challenging the court's application of a 21 U.S.C. § 851 second offender enhancement. Harris contended that "his trial and appellate counsel were ineffective in not contesting the sentencing enhancements he received as a result of his prior convictions." *See id.* at *1. Judge Chatigny rejected that argument and concluded that "counsel's failure to challenge the [section] 851 enhancement was not prejudicial," because "the same sentence would have been imposed regardless of a change in

13

the guideline calculation." *Id.* at *3 (citing *Pak*, 278 F. Supp. 2d at 268–69). Judge Chatigny had sentenced Harris to 300 months of imprisonment, 60 months below the bottom of the guideline range that would have applied had Harris successfully challenged the second offender enhancement. *See id.* Because Harris's "sentence was calculated, not mechanically on the basis of the low end of the range, but only after considering the factors enumerated in 18 U.S.C. § 3553(a) in light of the parsimony principle," Judge Chatigny reasoned that "the sentence still would have been the same" whether or not the second offender enhancement and career offender guideline applied. *Id.* Thus, Judge Chatigny held, Harris's attorneys' failure to challenge the section 851 enhancement was not prejudicial, and Harris was not entitled to resentencing. *See id.*

*Pak* and *Harris* support my conclusion that Hansberry was not prejudiced by any ineffective representation. Although Hansberry may be right that he should not have been classified as a career offender, I did not sentence him as one. Instead, I made clear that I "would have imposed the same sentence" regardless of whether Hansberry was subject to the career offender enhancement. *United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009). As a result, there is not a "reasonable probability that, but for counsel's error, the defendant would have received a different sentence," *Pak*, 278 F. Supp. 2d at 269 (citing *Johnson*, 313 F.3d at 818), and Hansberry was not prejudiced by any error on the part of his attorney. *See Molina-Martinez*, 136 S. Ct. at 1346. Because "any error in the [Guidelines] calculations was harmless," *United States v. Mandell*, 752 F.3d 544, 553 (2d Cir. 2014) (per curiam), Hansberry is not entitled to resentencing on the basis of ineffective assistance of counsel.

## IV. Conclusion

Hansberry's submissions as a *pro se* and forwarded by his counsel capably argue that he should not have been classified as a career offender. Nevertheless, I did not sentence Hansberry

14

on the basis of the career offender enhancement, and so any error in classifying him as a career offender under the Guidelines was not prejudicial and cannot support a claim for ineffective assistance of counsel. Accordingly, I deny Hansberry's motion to vacate, set aside, or correct his sentence under section 2255.

Hansberry has not shown that he was denied a constitutionally or federally protected right. Thus, any appeal from this order would not be taken in good faith and a certificate of appealability will not issue.

So ordered.

Dated at Bridgeport, Connecticut, this 14th day of August 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge